UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

APPISTRY, INC.,

               Plaintiff,

    v.

AMAZON.COM INC, et al.,

               Defendants.

CASE NO. C15-311 MJP

ORDER GRANTING
DEFENDANTS' MOTION FOR
JUDGMENT ON THE PLEADINGS

THIS MATTER comes before the Court on Defendants' Motion for Judgment on the Pleadings.  (Dkt. No. 139.)  Having heard oral argument and considered the Parties' briefing and all related papers, the Court GRANTS the motion.

**Background**

Plaintiff Appistry, Inc. brings suit against Amazon.com, Inc. and Amazon Web Services, Inc., for infringement of U.S. Patent No. 8,200,746 (the "'746 patent") and U.S. Patent No. 8,341,209 (the "'209 patent").  (Dkt. No. 21.)  Defendants move for judgment on the pleadings, arguing that Plaintiff's patents claim abstract ideas implemented on generic computers, and as such, are invalid under 35 U.S.C. § 101 and Alice Corp. v. CLS Bank Int'l, 134 S. Ct. 2347

1   (2014).  (Dkt. No. 139.)  Plaintiff opposes the motion, arguing that its patents do not claim

2   abstract ideas, and that even if they do, they include numerous limitations that transform the

3   ideas into patent-eligible applications.  (Dkt. No. 154.)

4                                        **Discussion**

5   I.      Legal Standards

6           A.      Judgment on the Pleadings

7           After the pleadings are closed, a party may move for judgment on the pleadings.  Fed. R.

8   Civ. P. 12(c).  A judgment on the pleadings is properly granted when, taking all the allegations in

9   the pleadings as true, the moving party is entitled to judgment as a matter of law.  Milne ex rel.

10  Coyne v. Stephen Slesinger, Inc., 430 F.3d 1036, 1042 (9th Cir. 2005).

11          B.      Patent Invalidity under 35 U.S.C. § 101

12          Laws of nature, natural phenomena, and abstract ideas are not patentable.  Alice Corp. v.

13  CLS Bank Int'l, 134 S. Ct. 2347, 2354 (2014).  Otherwise, monopolization of those tools through

14  the grant of a patent might tend to impede innovation more than it would tend to promote it,

15  thereby thwarting the primary objective of the patent laws.  Id. (citing Mayo Collaborative Servs.

16  v. Prometheus Labs., Inc., 132 S. Ct. 1289 (2012).)  At the same time, courts must tread carefully

17  in construing this exclusionary principle "lest it swallow all of patent law."  Id.

18          Accordingly, in applying the § 101 exclusionary principle, courts must distinguish

19  between patents that claim the "building blocks" of human ingenuity and those that integrate the

20  building blocks into something more, thereby transforming them into a patent-eligible invention.

21  Id.  To distinguish patents that claim laws of nature, natural phenomena, and abstract ideas from

22  those that claim patent-eligible applications of those concepts, courts first "determine whether

23  the claims at issue are directed to one of those patent-ineligible concepts."  Id. at 2355.  If so,

24

ORDER GRANTING DEFENDANTS' MOTION
FOR JUDGMENT ON THE PLEADINGS- 2

1  courts then ask "[w]hat else is there in the claims before [them]." Id.  To answer the second

2  question, courts "consider the elements of each claim both individually and 'as an ordered

3  combination' to determine whether the additional elements 'transform the nature of the claim'

4  into a patent-eligible application." Id.  The Supreme Court characterizes the second step as a

5  "search for an 'inventive concept,'" i.e. an element or combination of elements that is sufficient

6  to ensure that the patent in practice amounts to significantly more than a patent upon the

7  ineligible concept itself. Id.

8        II.      Step One: Patent-Ineligible Concept

9        The Court must first determine whether the claims at issue are directed to a patent-

10  ineligible concept.

11        Amazon argues that Appistry's patents are directed at the abstract idea of project

12  management and distributed processing akin to the command and control system used by the

13  military, among other organizations: use of a network of multiple actors to efficiently and

14  reliably process information and/or complete a task by breaking down the job into small pieces,

15  each handled by a different actor organized within an internal hierarchy.  (Dkt. No. 139 at 14.)

16  In support of this argument, Amazon points to the prosecution history of U.S. Patent No.

17  7,379,959—identified by Appistry as the parent patent of the patents-in-suit and incorporated by

18  reference into them—which was originally rejected by the U.S. Patent Office because the claims

19  were deemed unpatentable under 35 U.S.C. § 101, and which was later approved by the Patent

20  Office when Appistry added the phrase "one or more computers including" to the claims.  (Dkt.

21  No. 139 at 11-12.)

22        Appistry argues that the claims are directed to "novel, specific, and inventive applications

23  of multi-computer, distributed job processing that overcome the problems of previously existing

24

1   mission-critical computing platforms." (Dkt. No. 154 at 11.)  In other words, Appistry argues

2   that the claims cover a system of networked computers that communicate with each other and

3   coordinate tasks through a hierarchical structure, and that these computing-oriented and

4   computer-specific limitations take the claims out of the realm of the abstract.  (Id.)

5       The Court finds that the asserted claims are directed to an abstract idea.  The patents-in-

6   suit recite the abstract idea of distributed processing akin to the military's command and control

7   system, a longstanding and intuitive practice used by many large hierarchical organizations that

8   value speed, efficiency, reliability, and accountability.  The patents describe systems and

9   methods of using a network of multiple actors to efficiently and reliably process information

10  and/or complete a task by breaking down the job into small pieces, each handled by a different

11  actor organized within an internal hierarchy.  That the inventions describe this idea as

12  implemented by computers or as existing solely in the computing realm, and thus that the

13  inventions have no pre-computing analogues, does not "take[] the claims outside the realm of the

14  abstract," as Appistry contends.  (Dkt. No. 154 at 11.)  Rather, it highlights the fact that the

15  patents claim an abstract idea implemented in a particular technological environment: a "fabric"

16  of inexpensive networked computers.

17      Appistry argues that the patent claims are not directed towards an abstract idea because

18  they are not directed to a mathematical algorithm, a fundamental economic practice, or a

19  longstanding commercial practice, and instead address challenges particular to distributed

20  computer networks.  (Dkt. No. 154 at 12.)  Appistry's attempt to attach talismanic significance to

21  the mathematical algorithm, fundamental economic practice, and longstanding commercial

22  practice categories, however, has already been rejected by the Supreme Court, which explained

23  in Alice that the operative question is whether or not the patent claims are directed toward an

24

1   abstract idea, and <u>not</u> whether or not the invention could be classified into one of Plaintiff's three

2   categories.  <u>Alice</u>, 134 S. Ct. at 2356-57.  Appistry's arguments about the challenges of mission-

3   critical computing and distributed computing, and the benefits that distributed processing using

4   networked computers provides over previously available computing systems, are also

5   unavailing—that an abstract idea is a good idea does not make it any less abstract.

6        The Court finds that the elements of all of the claims at issue (claims 1-5 and 23-27 of

7   the '746 patent and claims 1, 9-11, 13-15, 23, 26, 34, 37-39, 47, and 50-52 of the '209 patent) are

8   directed towards the same abstract idea, as discussed above, whether analyzed individually or as

9   an ordered combination.  Claim 1 of the '746 patent and claims 1 and 50 of the '209 patent are

10  representative.

11       III.    Step Two: Inventive Concept

12       Having determined that the claims are directed to an abstract idea, the Court next

13  examines the elements of the claims to determine whether they contain an "inventive concept"

14  sufficient to transform the claimed abstract idea into a patent-eligible application.  Amazon

15  argues that the claims do nothing more than take the abstract idea and apply it with computers,

16  using only generic computers connected through generic networks.  (Dkt. No. 139 at 16.)

17  Appistry argues that the claims contain numerous limitations which transform the abstract idea

18  into patent-eligible applications by addressing computing problems and thereby improving how

19  computers function.  (Dkt. No. 154 at 15.)

20       A claim that recites an abstract idea must include "additional features" to ensure that the

21  claim is more than a drafting effort designed to monopolize the abstract idea.  <u>Alice</u>, 134 S. Ct. at

22  2357.  Mere recitation of a generic computer cannot transform a patent-ineligible abstract idea

23  into a patent-eligible invention, meaning that if a patent's recitation of a computer amounts to

24

ORDER GRANTING DEFENDANTS' MOTION
FOR JUDGMENT ON THE PLEADINGS- 5

1  mere instructions to implement an abstract idea on a computer, the claims fail to be patent

2  eligible.  Id. at 2358.  Given the ubiquity of computers, wholly generic computer implementation

3  is not generally the sort of "additional feature" that provides any practical assurance that the

4  process is more than a drafting effort designed to monopolize the abstract idea itself.  Id.

5        The fact that a computer necessarily exists in the physical, rather than purely conceptual,

6  realm, is beside the point.  Id.  Otherwise, computer implementation would allow applicants to

7  claim any principle of the physical or social sciences by reciting a computer system configured

8  to implement the relevant concept.  Id. at 2359.

9        In Alice, the Supreme Court framed the relevant question at step two as "whether the

10  claims here do more than simply instruct the practitioner to implement the abstract idea of

11  intermediated settlement on a generic computer."  Alice, 134 S. Ct. at 2359.  The Supreme Court

12  held that the Alice patents did not do more because "[t]aking the claim elements separately, the

13  function performed by the computer at each step of the process is purely conventional."  Id.

14  (internal quotation marks omitted).  The Supreme Court found that using a computer for

15  electronic recordkeeping was "one of the most basic functions of a computer" and that use of a

16  computer to obtain data, adjust account balances, and issue automated instructions are uses that

17  are "well-understood, routine, conventional activities previously known to the industry."  Id.

18  The Supreme Court then considered the claims as an ordered combination and found that the

19  claims "simply recite the concept of intermediated settlement as performed by a generic

20  computer."  Id.  In making that finding, the Court noted that the claims did not purport to

21  improve the functioning of the computer itself, and did not "effect an improvement in any other

22  technology or technical field."  Id.  The Court rejected the petitioner's arguments that its system

23  claims recited "specific hardware" configured to perform "specific computerized functions"

24

1   because the claims described only "purely functional and generic" hardware—in other words,

2   because nearly every computer will include a "communications controller" and a "data storage

3   unit" capable of performing basic calculation, storage, and transmission functions, "none of the

4   hardware recited by the systems claims offers a meaningful limitation beyond generally linking

5   the use of the method to a particular technological environment, that is, implementation via

6   computers." Id. at 2360.

7        The Court finds that the claims at issue do no more than simply instruct the practitioner to

8   implement the abstract idea of distributed processing akin to command and control on generic

9   computers, connected through generic networks.  The claims' invocation of computers adds no

10   inventive concept because the functions performed by the computers at each step of the process

11   are well-understood, routine, and purely conventional.

12        Appistry first argues that the inventions improve the way that computers function by

13   specifically addressing previously existing computing problems, thereby "improv[ing] the

14   utilization of computing resources and increas[ing] reliability and efficiency of computing

15   systems." (Dkt. No. 154 at 15-18.)  Essentially, Appistry argues that the inventions are

16   technological improvements to computing because they can accomplish a processing task more

17   quickly, more cheaply, and more reliably than previously available computing systems, such as

18   mainframes or distributed super computers.  But the actual systems and methods claimed—

19   through which efficiency and reliability are achieved—are well understood, routine, and purely

20   conventional, and do not supply an inventive concept separate from the underlying abstract idea.

21   That computers send and receive information over a network "is not even arguably inventive."

22   buySAFE, Inc. v. Google, Inc., 765 F.3d 1350, 1355 (Fed. Cir. 2014).  That computers are

23   capable of dividing a task between two or more linked computers in order to complete the task

24

1    more quickly and more efficiently is similarly basic.  That building internal checks and

2    safeguards into the process to ensure a previous task is adequately completed before moving on

3    to a subsequent task will improve reliability and efficiency is not an inventive concept; rather, it

4    is both conventional and obvious.  Claiming those safeguards as being hierarchically

5    implemented by various actors—here, networked computers operating as task directors, mid-

6    level managers, and lower-level workers—is not inventive, and neither is combining or

7    separating the actors' geographic locations to achieve a certain result.  Given the ubiquity of

8    computers, this type of wholly generic computer implementation does not supply the "additional

9    feature" required at step two.

10           Appistry also argues that networked computers which provide multi-computer distributed

11   job processing are not generic computers.  (Dkt. Nos. 154 at 18, 196.)  But the patents

12   themselves contradict this assertion.  Although using the technology claimed by the patents-in-

13   suit may require some configuration of common commercially-available prefabricated

14   computers, the patents themselves specify that they claim implementation on "generic

15   computers" which are connected over "generic networks."  The patents define the term

16   "computer" as "used generically herein to describe any number of computers, including, but not

17   limited to personal computers, embedded processing elements and systems, control logic, ASICs,

18   chips, workstations, mainframes, etc."  ('746 patent at 7:49-53; '209 patent at 8:22-26.)  The

19   patents define "hive engine" even more broadly as including not only "computers" but also

20   "other computing devices;" the terms "network" and "communications mechanism" are used

21   "generically herein to describe one or more networks, communications mediums or

22   communications systems, including, but not limited to the Internet, private or public telephone,

23

24

1  cellular, wireless, satellite, cable, local area, … etc." ( '746 patent at 14:38 and 8:14-22, '209

2  patent at 15:11 and 8:55-63.)

3       In effect, the patents' "numerous limitations" function only to limit the abstract idea of

4  distributed processing akin to command and control to a particular technological environment,

5  namely, networked computers.  As the Supreme Court explained in <u>Alice</u>, <u>Parker v. Flook</u>, 437

6  U.S. 584 (1978), stands for the proposition that the prohibition on patenting abstract ideas cannot

7  be circumvented by attempting to limit the use of the idea to a particular technological

8  environment.  <u>Alice</u>, 134 S. Ct. at 2358; <u>see also</u> <u>buySAFE</u>, 765 F.3d at 1355 (claims' narrowing

9  to cover only online transactions was "an attempt to limit the use of the abstract guarantee idea to

10 a particular technological environment, which has long been held insufficient to save a claim in

11 this context").  Analyzing the claim elements individually or as an ordered combination yields

12 the same result: the patents do not contain an inventive concept sufficient to transform the

13 abstract idea into a patent-eligible application.

14      The Court finds that the claims of the patents-in-suit amount to the recitation of an

15 abstract idea with instructions to apply the idea with ordinary computers connected through

16 ordinary networks.  As such, the patents claim patent-ineligible subject matter and are invalid

17 under 35 U.S.C. § 101 and <u>Alice Corp. v. CLS Bank Int'l</u>, 134 S. Ct. 2347 (2014).

18                                    **Conclusion**

19      The Court finds that the patents-in-suit are invalid under 35 U.S.C. § 101.  Defendants'

20 Motion for Judgment on the Pleadings is GRANTED.

21      /

22      /

23      /

24

The clerk is ordered to provide copies of this order to all counsel.


Dated this 9th day of July, 2015.


_____
Marsha J. Pechman
Chief United States District Judge